Argued May 2, reversed June 6, 1916.

## DANBY v. STARLIGHT IRR. CO.

(157 Pac. 1066.)

**Waters and Watercourses—Irrigation District—Property and Indebtedness—Evidence—Trust.**

1. In a suit to enjoin the assignment and payment of warrants issued by defendant irrigation district to an engineer and to cancel such orders, evidence *held* to show that the engineer, who had been paid a certain amount for services and expenses in making applications for water and reservoir privileges was acting as the agent of, and the trustee for, the district, so that he could not legally acquire any rights therein against the district which might become inimical to it, and was not entitled to any part of the warrants issued to him for such water and reservoir rights.

Waters and Watercourses—Irrigation District—Warrants—"Negotiable Instrument."

2. Warrants issued by the board of directors of an irrigation district appointed by the County Court of that county drawn on the treasurer of the district authorizing the holder to receive certain sums of money out of the *quasi* municipal treasury were not "negotiable instruments" in the sense of the law-merchant, in so far as to preclude evidence of their invalidity, or defenses available against the original payee, even when sought to be enforced by a *bona fide* purchaser.

[As to what are negotiable instruments, see note in 14 Am. Dec. 421.]

From Grant: DALTON BIGGS, Judge.

In Banc. Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by R. Danby, Albert Harper and A. J. Fletcher to enjoin the Starlight Irrigation District and others from the assignment and payments of warrants issued by the district to Michael Spears, and to cancel such orders. Decree for defendants dismissing the suit, and plaintiffs appeal. Reversed, and decree entered canceling all of the warrants given in evidence.

This is a suit to enjoin the assignment and payment of warrants issued by the Starlight Irrigation District to Michael Spears, and to cancel such orders. The cause being at issue, was tried, resulting in a decree dismissing the suit, and the plaintiffs appeal.

REVERSED.

For appellant there was a brief over the names of *Messrs. Crawford & Crawford* and *Mr. Otis Patterson,* with an oral argument by *Mr. Andrew M. Crawford.*

For respondent there was a brief and an oral argument by *Mr. George H. Cattanach.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The evidence shows that men interested in the commercial prosperity of Canyon City, Oregon, began,

in July, 1912, to discuss the advisability of forming
a commercial club, and on the 9th of the next month
they organized the Canyon City Citizens' League, an
unincorporated association. The purposes of this or-
ganization were to invite people with capital to en-
gage in business enterprises in that city and to en-
courage the development of the farming district near
that place. The defendant Michael Spears was a char-
ter member of the league. About two years prior to
its organization, he conceived the idea of diverting
from Canyon Creek water with which to irrigate an
extensive tract of arid lands in Grant County, near
Canyon City. As the members of the league were in-
terested in projects of that kind they gave attention
to his scheme as he detailed its seeming importance.
Spears, on August 23, 1912, filed with the state en-
gineer his applications, numbered 2526 and 2527, re-
spectively, to appropriate the waters of that stream
and to construct a reservoir to facilitate that purpose.
At a meeting of the league, held September 3, 1912,
Spears reported that he had secured all the rights
necessary for the contemplated plan of irrigation. At
another meeting of the league, held the next day, a
special committee was appointed to formulate a sys-
tem for the artificial watering of such lands. This
committee, on September 17, 1912, reported to the
league that in their opinion, the necessary funds for
the promotion of the scheme could best be secured by
creating a corporation and thereupon recommended
"that this matter be turned over to Mr. Michael
Spears, civil engineer, for the completion of this fea-
ture of the matter as he may deem best." Several
members of the league by executing to a bank their
promissory notes, secured $400, which sum with a like
amount furnished by an owner of quite a tract of land

in the proposed irrigating district was advanced to
Mr. Spears to enable him to make the requisite sur-
veys and to defray the expenses of initiating the
project. Mr. Spears commenced the survey for a
reservoir site November 4, 1912, this work being the
first step taken for the organization of an irrigation
district. The defendant the Starlight Irrigation Dis-
trict was created and its directors were elected October
11, 1913. Mr. Spears, on January 6, 1914, presented
to the board of directors a bill for services asserted
to have been rendered for the district, amounting to
$3,020.58. After setting forth in the bill several items,
Mr. Spears, in referring to another particular therein,
states:

"I then prepared applications and incompleted map
and obtained application (No. 2526 incomplete), by
which the time may be extended from time to time,
and which has been done up to the present time await-
ing the organization of the district and complete maps
and application for the final permit. I will assign this
application to the district whenever necessary and the
directors make arrangements and are ready to receive
along with the other property which belongs to the
district and is now in my possession. Ditch right ap-
plication No. 2526, $5,000. This item is open for dis-
cussion and has not been included in the final total."

Adverting to the claim of $3,020.58, Mr. Spears fur-
ther remarks:

"In regard to this bill I have to say that it is regular
first engineer's wages, and for money and expenses
advanced. But it seems to me to be entirely out of
proportion to the future benefits to be received by the
land owners. The waters of Canyon Creek have been
allowed to waste for the last 30 years, and probably
would continue to waste, but for my taking all risks
and trusting to the justice of the people, for my re-
ward, provided I made a success, and if not I lost all.
I believe that I am entitled to more than simply regu-

lar wages and return of money advanced. And I further believe that every right-minded person in the district is of the same opinion. But I do not see that the board of directors have legal authority to be more liberal no matter how much they might desire to be. Any larger amount or reward would have to be passed upon by the people at some future time.

"MICHAEL SPEARS, C. E."

Based on the petition of R. Danby, one of the plaintiffs herein, and others, filed April 7, 1914, to eliminate from the irrigation district the greater part of the lands therein, the secretary of the board was directed by that body to cause a notice of such application to be printed in the "Blue Mountain Eagle," a weekly newspaper published at Canyon City, for three successive and consecutive issues of that journal. At a meeting of the board the bill filed by Mr. Spears was considered and a warrant was drawn in his favor for the sum of $1,590.89 as compensation for his services, and on May 4, 1914, he issued to the Starlight Irrigation District a receipt therefor, wherein it was stated that the sum named was acknowledged "for irrigation expenses in full up to date for the purposes of organization." From the money thus obtained Mr. Spears repaid the $800 which had been advanced to him, and also other incidental expenses. Pursuant to a due publication of the notice referred to, a meeting of the owners of real property situate within the Starlight Irrigation District was held May 5, 1914, when by a majority vote of the qualified electors it was determined that the part of the district, specified in the petition, should be eliminated, whereupon the then members of the board tendered their resignations to the County Court of Grant County, to take effect immediately. That court, on May 16, 1914, appointed as their successors F. S. Slater, J. F. Klink and J. C.

Larkin, who on the second of the next month qualified for the trust. To the last-named persons in their official capacity the following written proposal was made:

"To the Board of Directors of the Starlight Irrigation District, Grant County, Oregon.

"Gentlemen: I hereby offer to sell and assign to the Starlight Irrigation District, above named, the applications for water permits now held by me, the same being application No. 2526 for a permit to appropriate 250 cubic feet per second of the water of Canyon Creek, Grant County, Oregon, the same to be taken from the Canyon Creek or Spear's Reservoir described in application 2527, the said water to be used for the purpose of irrigating the lands within your district, and application No. 2527, which is an application for a permit to construct a reservoir and store the waters of Canyon Creek, above named, to the amount of 24,159 feet; the said reservoir being intended to furnish the water to be appropriated under application No. 2526; both of which applications are now on file with the state engineer of the State of Oregon. The said assignment to be made on the following terms, to wit: I will assign the said applications to the district at this time, the said district to pay therefor as purchase price 21 cents per acre for all of the land within the boundaries as originally organized: Provided, however, that if the courts shall finally decide that the elimination of a part of the lands made by the board of directors of the district on the 5th day of May, 1914, whereby approximately 15,000 acres of lands were eliminated from the district, was proper and legal then the district shall only be bound to pay, as such purchase price, 21 cents per acre for each acre of land remaining in the district after such elimination. The said purchase price to be paid in warrants of the district; $800.00 to be paid upon acceptance of this offer to assign, and the balance to be paid as soon as the courts shall finally decide the legality of the said order of elimination.

"Dated at Canyon City, Oregon, this 6th day of August, 1914.

"MICHAEL SPEARS."

In a suit, instituted in the Circuit Court of the State of Oregon for Grant County, to determine the validity of the elimination of a part of the land from the irrigation district, it was decided that the proceedings undertaken for that purpose were irregular and that no withdrawal of any part of the territory had been effected. The board of directors so appointed by the County Court of that county accepted Mr. Spears' offer, and thereupon caused to be issued to him warrants drawn on the treasurer of the irrigating district, amounting to $4,284. Mr. Spears on August 6, 1914, duly assigned to the Starlight Irrigation District all his right, title and interest in and to applications numbered 2526 and 2527, which transfers were duly recorded on the 18th of that month in the miscellaneous records of the state engineer. This suit was commenced April 10, 1915, to enjoin the transfer of such warrants and to secure their cancellation. The evidence shows that Mr. Spears had assigned to his counsel as attorneys' fees a part of such warrants of the face value of $400, and that he held the remainder, though he had agreed to transfer them for a valuable consideration. This cause was tried on the theory of the plaintiffs' counsel that Mr. Spears, in making applications numbered 2526 and 2527 for the water and reservoir privileges, was acting as the agent of and the trustee for the Starlight Irrigation District, that the rights which he thus secured inured as benefits to that *quasi* municipal corporation, and that having been paid for the services which he performed, the warrants which he obtained as evidence of the considera-

80 Or.—40

tion for a transfer of such rights were improperly issued and should be canceled.

None of plaintiffs' witnesses positively assert there was an express agreement by the terms of which Mr. Spears should act as the agent of the irrigation dis-- trict, but each person thus appearing who professed to know testified that it was the general understanding that Mr. Spears was such trustee. On cross-examination Mr. Spears testified:

"I never have intended to charge the district anything more than my expenses and the work I have done on the water rights, and which somebody had to do in order to sustain the water rights."

Further in the cross-examination this witness was interrogated as follows:

"Now, then, Mr. Spears, I want to ask you this, generally, if it wasn't a kind of a neighborhood proposition that was taken up for the general advancement of Canyon City and the valley, this part of the valley?"

He answered:

"Yes, sir; and partly for my benefit."

F. S. Slater testifed that as a member of the board appointed by the County Court, it was considered in issuing warrants to Mr. Spears that he was receiving only a just and fair compensation for the services which he had performed for the district. This witness gave no detailed statement of the services so performed.

It will be remembered that in giving a receipt for the warrant issued by the old board to him for $1,590.89, Mr. Spears acknowledged full payment for the expenses incurred in organizing the irrigation district. It would thus seem that when the board, appointed by the County Court, issued to Mr. Spears warrants for $4,284, it was intended to compensate

him for assigning to the district the applications which he had made for the water and reservoir rights. Spears as a charter member of the Canyon City Citizens' League, like all other members of that organization, was presumedly interested in every honorable project that tended to promote the commercial importance of Canyon City and vicinity. For all actual services rendered by him for the league he is entitled to a reasonable compensation.

We believe it is fairly to be inferred from the evidence that he was in fact the trustee for the Starlight Irrigation District, and sustaining, as it is believed he did, that relation to it he could not legally acquire any rights against the *cestui que trust* that might become inimical to it, and hence he is not entitled to any part of the warrants issued to him for $4,284. Of these orders so issued by the proper officers, authorizing Mr. Spears to receive certain sums of money out of the *quasi* municipal treasury, warrants of the face value of $400 were assigned to his counsel as fees, and these obligations appear to have been transferred before this suit was brought.

2. But however this may be, these "warrants are not negotiable instruments in the sense of the law-merchant, in so far as to preclude evidence of their invalidity or defenses available against the original payee, even where they are sought to be enforced by a *bona fide* purchaser": 5 McQuillin, Mun. Corp., § 2449. The attorney could obtain no better title to such choses in action than his client held, and these warrants must be subject to the decree applicable to the others now in the possession of Mr. Spears.

The decree will therefore be reversed and one entered here canceling all the warrants given to evidence the demand of $4,284.

REVERSED.    DECREE RENDERED.